UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTIAN HARA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-1062 (RMC) |
| ) | |
| HARDCORE CHOPPERS, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Christian Hara, a resident of the District of Columbia, contracted with Hardcore Choppers, LLC, of Virginia, to redesign and remanufacture her motorcycle. Ms. Hara thereafter lost control of the motorcycle on Rock Creek Parkway in the District of Columbia and suffered very serious injuries from the resulting crash. She blames the instability of the front end of her motorcycle after Hardcore's redesign and sues Hardcore in the District of Columbia. Hardcore moves to dismiss or to transfer to the Eastern District of Virginia, arguing that it does not do business in the District so that it is not subject to personal jurisdiction here, and that the contract contained both a forum selection clause and a waiver of liability which preclude this suit.

The forum selection clause, which this Court finds is fully enforceable, decides where this case should be tried. The Court addresses only that issue.

**I.     FACTS**

Christian Hara visited the Hardcore Choppers location in Sterling, Virginia on or about July 8, 2010. Def.'s Reply [Dkt. 13] Ex. A (Decl. Alfredo Carlin) ¶ 6; Def.'s Reply Ex. B (Decl. David Mathis) ¶ 2. She discussed a redesign and remanufacturing of her motorcycle with

1

Hardcore employees. Mathis Decl. ¶ 2. Hardcore gave Ms. Hara Invoice # 001397 to record the work she wanted done to her motorcycle. *Id.* ¶ 4; Mathis Decl. Ex. 1 ("Invoice 1397"); *see also* Pls.' Opp. Ex. 1 [Dkt. 11-2] (same). Thereafter, by "Final Work Order," Invoice No. 1455 dated July 14, 2010, Hardcore committed to perform the work list attached to the original invoice and priced the work. Mathis Decl. ¶ 6; Mathis Decl. Ex. 3 ("Final Work Order"); *see also* Pls.' Opp. Ex. 23 [Dkt. 11-24] (same). Ms. Hara signed the Final Work Order, expressly authorizing the work to be done for about $9,900. Mathis Decl. ¶ 7; Final Work Order. The Final Work Order clearly contained the following paragraph above the signature line, albeit in small typeface:

WAIVER OF LIABILITY AND RELEASE OF ALL CLAIMS

Customer has read, understands and accepts that by employing Hardcore Choppers LLC, to customize, alter, replace, add, or change any existing part and/or accessory from the vehicle, will change the original engineering and integrity of the vehicle. As such, customer hereby agrees as follows: Customer recognizes and understands the scope, nature and extent of the risks involved in driving the vehicle after the repair, customization, alteration, replacement, addition or change. The customer voluntarily, freely, and expressly chooses to assume all risks and hazards associated with such. Additionally, the customer understands and accepts that custom parts application is outside the norm and not compliant with the original design and purposes of [ill.] motorcycle. Custom parts application does not conform with manufacturers guidelines and will void a manufacturer warranty. Custom parts are not street legal nor approved for highway use. Custom parts have not been tested, evaluated, or approved by a government agency. Further, the customer releases, discharges, absolves, indemnifies and holds harmless Hardcore Choppers, LLC, and it's [sic] owners and/or representatives from any and all liability, claims, demands, causes of action whatsoever arising out of any damage, loss, injury, or death to me, my property, and other individuals and their property. Including any claims caused by negligence of Hardcore Choppers, LLC, for all work described on the Final Work Order/Invoice. CUSTOMER INTENDS AND AGREES that this Release and Waiver of Liability Agreement will be governed by Virginia law in Loudoun County. *CUSTOMER also agrees that any dispute relating to this Agreement will be resolved exclusively in the Courts of Virginia.* CUSTOMER also waives the rights to a trial by jury. I HAVE READ AND UNDERSTAND THE FOREGOING RELEASE AND BY

2

> AFFIXING MY SIGNATURE TO THIS FINAL WORK ORDER/INVOICE, SIGNIFY MY CLEAR INTENTION TO BE LEGALLY BOUND BY IT. THIS RELEASE SHALL NOT BE AMENDED OR MODIFIED OR ANY OF ITS PROVISIONS WAIVED UNLESS IN WRITING AND SIGNED BY THE LEGALLY AUTHORIZED REPRESENTATIVES OF BOTH PARTIES.

Final Work Order (emphasis added).

The redesigned motorcycle was delivered to Ms. Hara on September 16, 2010. Mathis Decl. ¶ 9; Compl. [Dkt. 1] ¶ 5. On Saturday, October 30, 2010, at approximately 1:25 p.m., she was driving on her motorcycle on Rock Creek Parkway "when she was caused to lose control of the motorcycle due to instability in its front end, throwing her from the motorcycle to the roadway." Compl. ¶ 4. She suffered permanent injuries, including spinal cord injury and paraplegia. *Id.* ¶ 8.

This suit was filed on June 27, 2012, by Christian and Jennifer Hara, bringing claims based on strict liability, breach of implied warranty, negligence, and loss of consortium.

## II. LEGAL STANDARD—VENUE

28 U.S.C. § 1391 governs venue in federal district courts, providing in relevant part that "[a] civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may, at the lawsuit's outset, test whether the plaintiff "has brought the case in a venue that the law deems appropriate." *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006). "If the plaintiff's

chosen forum is an improper venue under applicable statutes, or is otherwise inconvenient, the Court may dismiss the action or transfer the case to a district where venue would be proper or more convenient." *Id.* (citing 28 U.S.C. § 1406 (providing for dismissal or transfer when venue is defective) and 28 U.S.C. § 1404 (allowing venue transfer "for the convenience of the parties and witnesses")). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).

"[W]hen parties have agreed to a forum selection clause, the traditional analysis is altered and . . . the clause should control absent a strong showing it should be set aside." *Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 154 (D.D.C. 2008) (quoting *2215 Fifth St. Assoc. v. U–Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 58 (D.D.C. 2001) (internal quotations omitted)); *see also M/S Bremen v. Zapata Off–Shore Co.* (The Bremen), 407 U.S. 1, 10, 12 (1972) ("[forum-selection] clauses are prima facie valid" and "should be honored by the parties and enforced by the courts"). Forum selection clauses are to be enforced unless the party resisting enforcement shows that one of the exceptions set forth in *The Bremen* applies. The opponent of enforcement must make a "strong showing" that (1) "enforcement would be unreasonable and unjust"; (2) "the clause was invalid for such reasons as fraud or overreaching"; (3) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision"; or (4) "trial in the contractual forum would be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court." *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 118 (D.D.C. 2008) (quoting *The Bremen*, 407 U.S. at 15) (internal quotations omitted)).

The "presumption in favor of forum selection clauses" includes clauses in "non-negotiated boilerplate contracts." *Gipson*, 563 F. Supp. 2d at 154 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

### III. ANALYSIS

The parties dispute whether the law of the Commonwealth of Virginia or the District of Columbia should be applied to the parties' contract. Of course, the law of different jurisdictions might apply to different provisions in the same contract. *See, e.g.*, Restatement (Second) of Conflict of Laws § 187 (1971) Reporter's Note ("The parties are free to refer to whatever number of laws is necessary to state adequately the terms of their contract."). Dispositive for purposes of Hardcore's motion, however, is the sentence highlighted above: Ms. Hara expressly agreed "that any dispute relating to this Agreement will be resolved exclusively in the Courts of Virginia." This Court has no reason not to hold her to her bargain.

Ms. Hara contests the validity of the Final Work Order as the operative contract, inasmuch as she signed Invoice 1397 on July 18, 2010, which did not contain the waiver and venue language quoted above, but did, so she argues, contain the price and, as an attachment, a listing of the work to be done. Pls.' Opp. at 12–14. Thus, she contends, Invoice 1397 constituted a complete contract and the Final Work Order (Invoice 1455) and its forum selection clause are irrelevant. *Id.* Hardcore, in response, has explained by sworn declaration how its custom-motorcycle business operates.[1] When a customer first meets with a Hardcore representative, Hardcore creates an "open ticket" or "open invoice" that "is in the nature of a

---

[1] On a motion to dismiss based on improper venue under Rule 12(b)(3), the Court accepts as true a plaintiff's well-pled factual allegations regarding venue but "may consider material outside of the pleadings," such as the sworn declarations submitted by Hardcore. *See Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (citing *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002)).

preliminary work order, is subject to change, and is frequently revised numerous times before the customer reaches a final decision concerning the scope of the work."[2] Def.'s Reply at 6 (citing Carlin Decl. ¶ 34). Once the customer and Hardcore reach agreement as to the custom work to be done, and once Hardcore has had a chance to prepare a price quote, Hardcore asks the customer to sign a "Final Work Order and Invoice Form." *Id.* (citing Carlin Decl. ¶ 37). The Final Work Order sets forth the agreed-upon work and price and also contains the liability waiver and forum selection clause. *Id.*

Although Ms. Hara argues that "[t]he parties treated the original invoice, and only the original invoice, as the work invoice," Pls.' Opp. at 13, she presents no sworn declaration to support her argument and the sworn declarations of Alfredo Carlin and David L. Mathis, submitted by Hardcore with its Reply, demonstrate that Invoice 1397 was a preliminary, open invoice that *did not state a price on July 8*, when it was created and signed by Ms. Hara. Mathis Decl. ¶¶ 2–4; Invoice 1397. Attached to Invoice 1397 and titled "Attached 'A'" is a typewritten document prepared by Ms. Hara that includes her name and address and a list of work she wanted done, including front-end work. Hara Work Request, Mathis Decl. Ex. 2. After Ms. Hara left the shop, Messrs. Carlin and Mathis developed the price quotation, as suggested by handwritten pricing notes that appear on Hara Work Request sheet. Mathis Decl. ¶ 5. The price was written on the open invoice at about the same time Ms. Hara was presented with Invoice 1455, the Final Work Order, which gave a price for the work, contained the waiver and venue language quoted above, and specified that "[t]his form [supercedes] all other work orders and invoices." *Id.* ¶¶ 6-9; Final Work Order. Ms. Hara signed the Final Work Order on July 14, indicating her agreement to the scope of work and price, and made a deposit of $3,500 by credit

---

[2] Hardcore maintains an "open invoice" until the work is completed because customers often change aspects of its custom work as it progresses. *See* Carlin Decl. ¶ 34, Mathis Decl. ¶ 10.

6

card. Mathis Decl. ¶ 8. The delivery date of "9/16/10" was entered on both the preliminary invoice and the Final Work Order later, when the motorcycle was delivered to Ms. Hara. *Id.* ¶ 9.

Although she filed a surreply, Ms. Hara did not contest the facts cited above. Most importantly, she no longer contests that the Final Work Order contained pricing information and her requested scope of work, as well as the language on waiver and venue, or that she both signed the Final Work Order and made a deposit on July 14, 2010. *See* Pls.' Surreply [Dkt. 14] at 5–10 (arguing only that "[t]he case should be tried in D.C., and the waiver of liability should be invalidated pursuant to the law of Virginia, which is the law of the place where the parties signed the invoice and the law Hardcore's invoice says will apply"). These facts demonstrate that the contract at issue is the Final Work Order, not Invoice 1397. *See Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981) (emphasizing that "there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract," thus no contract existed where the payment amount was not included). Ms. Hara's surreply did not contest Hardcore's legal argument that she had already agreed to Virginia as the venue for any disputes. These points are therefore conceded. *See, e.g.*, *United States v. Real Prop. Identified as: Parcel 03179-005R*, 287 F. Supp. 2d 45, 61 (D.D.C. 2003) (collecting cases concluding that a party concedes an argument raised by an opposing party's memorandum by filing a responsive memorandum that neglects to address the argument).

Despite these concessions, Ms. Hara seeks to escape the consequences of the Final Work Order by arguing that it was not supported by consideration. Pls.' Opp. at 14–15. The argument must fail. Invoice 1397 reflected only Ms. Hara's initial conversations with Hardcore; she no longer contests that it did not contain any pricing information and did not

7

represent a commitment by Hardcore to perform the work reflected on the attachment. Consideration for the Final Work Order was reflected on the Final Work Order: Ms. Hara made a deposit of $3,500 and promised to pay the balance, and Hardcore agreed to perform the work she requested. *See Richmond Eng'g & Mfg. Corp. v. Loth*, 115 S.E. 774, 787 (Va. 1923) (consideration is "a benefit received by the promisee, at his request . . . and a benefit moving from the promisee"); *3511 13th St. Tenants' Ass'n v. 3511 13th St., N.W. Residences, LLC*, 922 A.2d 439, 443 (D.C. 2007) (defining consideration under District of Columbia law).

Finally, Ms. Hara argues that the forum selection clause is unenforceable because it is printed in the same paragraph as the liability waiver and the two thus "are indivisible portions of a single provision." Pls.' Opp. at 15–18. Since, she argues, the liability waiver cannot be enforced under Virginia law, so too, she argues, the venue clause cannot be enforced. Not so. While Ms. Hara asserts that Virginia law governs the liability waiver, Hardcore contends that D.C. law applies and the waiver is valid. Def.'s Reply. at 11–17. The parties' disputes as to the interpretation of the contract and the conflict of law analysis should be addressed in Virginia, where they have agreed to litigate. *See Cheney*, 583 F. Supp. 2d at 120 (noting that *The Bremen* does not require "every court to decide the merits of a case before deciding whether transfer of venue is warranted").

Ms. Hara has not made a "strong showing" that any of the *Bremen* exceptions to enforcement of a forum selection clause applies, nor has she even made any argument that one or more of the exceptions applies. Nonetheless, the Court will examine the exceptions *sua sponte* to avoid injustice. Ms. Hara has not argued that either of the first two factors, that "enforcement would be unreasonable and unjust" or that "the [forum selection] clause was invalid for such reasons as fraud or overreaching," are present, and the evidence would not support such an

argument. *Cheney*, 583 F. Supp. 2d at 118 (finding no evidence of fraud or overreaching in case where there was "no allegation that the forum selection clause was concealed or that he agreed to the clause as a result of coercive tactics by defendants"). The fact that the contract was preprinted is of no matter because "'the presumption in favor of enforcing a forum selection clause applies even if the clause was not the product of negotiation.'" *2215 Fifth St. Assocs.*, 148 F. Supp. 2d at 56 (quoting *Marra v. Papandreou*, 59 F. Supp. 2d 65, 70 (D.D.C. 1999)). Ironically, the third factor—whether "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision," *Cheney*, 583 F. Supp. 2d at 118—favors Ms. Hara if the case is transferred. Virginia has a strong public policy against liability waivers and the District of Columbia does not, as evidenced by the limited holding of the District of Columbia Court of Appeals in *Moore v. Waller*, 930 A.2d 176, 183 (2007) that "it does not violate public policy [of the District] to enforce exculpatory clauses contained in membership contracts of health clubs and fitness centers." Finally, as to whether "trial in the contractual forum would be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of [her] day in court," *id.*, courts in this District routinely recognize that the inconvenience posed by transfer to the Eastern District of Virginia is negligible given the close proximity of that district to Washington, D.C. *See, e.g.*, *King v. Navistar Intern. Transp. Corp.*, 709 F. Supp. 261, 262 (D.D.C. 1989).

The Court concludes that the Final Work Order constituted a valid contract and that, pursuant to its express terms, Ms. Hara agreed to litigate any disputes in Virginia. "[Forum-selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Commerce Consultants Int'l,*

9

*Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 697, 699 (D.C. Cir. 1989) (quoting *The Bremen*, 407 U.S. at 10). Ms. Hara has not made that showing.

## IV. CONCLUSION

Because the parties agreed to litigate disputes in Virginia, the Court will transfer this case to the Eastern District of Virginia, leaving it to the transferee court to decide other issues of jurisdiction that may arise and whether the law of the District of Columbia or Virginia should be applied to different aspects of this matter.[3] A memorializing Order accompanies this Memorandum Opinion.

DATE: November 14, 2012

/s/
ROSEMARY M. COLLYER
United States District Judge

---

[3] "There is considerable uncertainty among the federal courts" as to whether a court giving effect to a forum selection clause transfers the case pursuant to 28 U.S.C. § 1404 (transfer "[f]or the convenience of parties and witnesses, in the interest of justice") or 28 U.S.C. § 1406 (transfer "in the interest of justice" when venue laid in the wrong forum). *2215 Fifth St. Assocs.*, 148 F. Supp. 2d at 58 n.3. Regardless of which provision is the more appropriate, the Court concludes that the interest of justice requires transfer of this case to the Eastern District of Virginia.